IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                      CRIMINAL NO.: WDQ-10-0531

JOHN R. MCLEAN,

    Defendant.

MEMORANDUM OPINION

Dr. John McLean was indicted for Medicare fraud and making false statements in connection with the payment of health care benefits. For the following reasons, the Government's motion to limit expert testimony under Rule 702 was granted in part, and denied in part.

I. Background[1]

On July 20, 2011, the Court denied the Government's motion to exclude the expert testimony of Dr. Marmur, but allowed the Government to depose Dr. Marmur before he testified at trial. ECF No. 54. The Government deposed Dr. Marmur on July 21, 2011, and filed a motion to limit his testimony the same day. ECF No. 53. The Court held a hearing on that motion. At the hearing and in its motion, the Government argued that some of Dr. Marmur's testimony should be excluded as unreliable under Fed. R. Evid. 702.

---

[1] The full background of this case is set out in the Court's July 15, 2011 Memorandum Opinion. ECF No. 43.

II. Analysis

Rule 702 "serves as the guidepost for determining the admissibility of expert testimony." *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 Fed. Appx. 612, 617 (4th Cir. 2011). Under the Rule, an expert may only testify if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In considering the admissibility of expert testimony, the district court acts as a gatekeeper, admitting only that expert testimony which is "relevant to the task at hand" and rests "on a reliable foundation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The court determines whether the expert's testimony reflects "scientific knowledge" and assess the soundness of the expert's methodology, but does not weigh the correctness of his opinion. The task "is to analyze not what the expert[] say[s], but what basis [he] ha[s] for saying it." *Daubert v. Merrel Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*"). But, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999).

At the hearing, the Court ruled that Dr. Marmur's opinions were based on a reliable, objective standard—that stenting could be medically indicated with 50 percent or greater blockage plus a positive stress test or symptoms of blockage such as chest pains. This standard is "falsifiable, refutable, or testable." *See Am. & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 138 (6th Cir. 1995)(*citing Daubert*, 113 S. Ct. at 2796-97). The Court ruled that Dr. Marmur would be permitted to testify based on the 50 percent plus standard. But, any testimony that one of Dr. McLean's stents was within the standard of care merely because Dr. Marmur had seen other cardiologists perform similar stents was excluded as unreliable.[2]

III. Conclusion

For the reasons stated above, the Government's motion was granted in part, and denied in part.

7/22/11
Date

William D. Quarles, Jr.
United States District Judge

---

[2] The Government also sought to prevent Dr. Marmur from testifying that certain angiograms could be interpreted as showing a lesion of 70% or greater, even if his opinion was that the lesion was less significant. The Court ruled that such testimony was relevant to the issue of inter-reviewer variability in the reading of angiograms. However, Dr. Marmur was directed that he would not be allowed to "mindread" by testifying that Dr. McLean had so interpreted those angiograms.

3